IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, et al.,

Plaintiffs,

v. 1:07cv446 (JCC)

MANASSAS DONUT INCORPORATED, et al.,

Defendants.

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiffs Dunkin' Donuts Franchised Restaurants LLC and DD IP Holder LLC's Motion to Strike Defendants Manassas Donut Inc., Silvino R. Lima, and Bruce A. Gross's Jury Demand and Any Claim for Punitive Damages. For the following reasons, the Court will grant the Motion.

## I. Background

Plaintiffs Dunkin' Donuts Franchised Restaurants LLC and DD IP Holder LLC (collectively, "Dunkin' Donuts") are engaged in the business of franchising independent businesspersons to operate Dunkin' Donuts shops throughout the United States. By entering into a franchise agreement with Dunkin' Donuts, each franchisee may use the trade names, service marks, and trademarks of Dunkin' Donuts and operate under the Dunkin' Donuts system.

This system involves the production, merchandising, and sale of doughnuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information. Dunkin' Donuts provides each of its franchisees a set of manuals and guidelines (collectively, "Dunkin' Manuals"), which detail the procedures, methodology, and standards applicable to operating a Dunkin' Donuts shop. These manuals provide detailed and specific guidance regarding health, sanitation, and safety.

Dunkin' Donuts entered into several franchise agreements with Defendant Manassas Donut Inc. ("Manassas Donut") on March 19, 2003, and June 17, 2004 (collectively, the "Agreements"). Defendant Silvino R. Lima ("Mr. Lima") is the President of Manassas Donut as well as a shareholder, and Defendant Bruce A. Gross ("Mr. Gross") is a shareholder. On May 2, 2007, Dunkin' Donuts brought suit against Manassas Donut, Mr. Lima, and Mr. Gross (collectively, "Defendants") for breach of contract and trademark infringement. Subsequently, on May 22, 2007, Defendants' shop at 8985 Centreville Road in Manassas, Virginia was inspected by a representative of the Steritech Group, Inc. ("Steritech"), a third-party hired by Dunkin' Donuts to conduct food safety inspections. The inspection identified a

number of health, sanitation, and safety standards violations that were damaging to Dunkin' Donuts' reputation and goodwill. Following the inspection, a Steritech representative provided Defendants with notice to cure the violations immediately.

Because numerous violations remained uncured, on June 12, 2007, Dunkin' Donuts filed an Amended Complaint and moved for a Preliminary Injunction. In response, Defendants filed separate Answers to the Amended Complaint, each of which included counterclaims against Dunkin' Donuts and a demand for a jury trial. On December 28, 2007, Dunkin' Donuts filed its Motion to Strike Defendants' Jury Demand and Any Claim for Punitive Damages. This matter is currently before the Court.

## II. Analysis

In its Motion, Dunkin' Donuts contends that by signing the Agreements, Defendants expressly waived their right to a jury trial as well as their right to any claim for punitive damages. The Court will address the jury trial waiver first before turning to the punitive damages waiver.

Rule 39(a)(2) of the Federal Rules of Civil Procedure provides that when a trial by jury is demanded, the case must be docketed as a jury action and a trial on all issues so demanded must be by jury unless "the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2). The Seventh Amendment of the United States Constitution guarantees the right to a jury

trial in civil cases. Courts have long recognized, however, that parties to a contract may by prior written agreement waive this right. *See, e.g.*, *Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 832 (4th Cir. 1986); *K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir. 1985); *National Equipment Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977). For such a waiver to be valid, the party seeking its enforcement "must prove that consent was both voluntary and informed." *Leasing Serv. Corp.*, 804 F.2d at 833; *see also Lake James Community Volunteer Fire Dep't, Inc. v. Burke County, N.C.*, 149 F.3d 277, 280 (4th Cir. 1998)("The contractual waiver of a constitutional right must be a knowing waiver, must be voluntarily given, and must not undermine the relevant public interest in order to be enforceable."). Thus, in this case the burden is on Dunkin' Donuts to prove that any contractual waiver is knowing and voluntary.

Courts consider various factors in determining the validity of a jury trial waiver. These factors include: (1) the parties' negotiations concerning the waiver provision; (2) the conspicuousness of the provision in the contract; (3) the relative bargaining power of the parties; and (4) whether the waiving party's counsel had an opportunity to review the agreement. *Tradewinds Aviation, Inc. v. Jet Support Serv., Inc.*, 2004 U.S. Dist. LEXIS 19380, at **10-11 (N.D. Ill. Sept. 27, 2004); *see also Neuro-Rehab Assocs. v. Amresco Commer. Fin., LLC*,

2006 U.S. Dist. LEXIS 40671, at *22 (D. Mass. June 19, 2006)(providing a similar list of factors, emphasizing the waiving party's sophistication and the clarity of the agreement). Courts have found waivers knowing and voluntary even in the context of franchise agreements, where contractual terms are often non-negotiable and where there may be a slight disparity of bargaining power between the parties. *See, e.g.*, *Bishop v. GNC Financing, LLC*, 2006 U.S. Dist. LEXIS 57947, at **4-5 (W.D. Pa. Jan. 13, 2006)(finding that, although there was no opportunity to negotiate the contract terms, the jury trial waiver was valid because the franchisee was under "no particular pressure" to purchase the franchise); *Bonfield v. AAMCO Transmissions, Inc.*, 717 F. Supp. 589, 596 (N.D. Ill. 1989)(finding that, despite the franchisor's unwillingness to accept contract changes, the jury trial waiver was valid because the franchisee was not compelled to accept the franchise and was free to reject the offer).

In this case, Dunkin' Donuts points to two places in the parties' Agreements where a waiver of the right to a jury trial appears. The first place is Section 11.7.1 of the General Terms and Conditions, where it states, partly in capital letters, that "[t]he parties hereto and each of them EXPRESSLY WAIVE(S) THE RIGHT ANY MAY HAVE TO A TRIAL BY JURY." Ex. 1 to Pls.' Mot. to Strike; Ex. 2 to Def. Lima's Opp'n to Pls.' Mot. to Strike. The second place is the signature page of the Agreements, where it states, in bold and in capital letters:

> **FRANCHISEE ACKNOWLEDGES SECTION 11 OF THE GENERAL TERMS & CONDITIONS OF THIS CONTRACT, WHICH PROVIDES FOR FRANCHISEE'S EXPRESS WAIVER OF RIGHTS TO A JURY TRIAL . . . .**

*Id.* The fact that the waiver clause was listed in a conspicuous manner – in two places, both times in capital letters and once in bold font – weighs in favor of a finding that Defendants knowingly and voluntarily waived their right to a jury trial. Moreover, based on the holdings of cases like *Bishop* and *Bonfield*, cited above, the fact that the Agreements were, by Dunkin' Donuts' own admission, standardized and non-negotiable, will not invalidate the jury waiver provision.

The next question, then, is whether Defendants' attorneys had the opportunity to review the Agreements. Dunkin' Donuts asserts that Mr. Gross is an attorney and that he claimed at his deposition to have read the Agreements before signing them. Pls.' Mot. to Strike at 4. This claim was partially bolstered at oral argument on January 4, 2008, when Mr. Lima's counsel admitted that Mr. Gross is an attorney, albeit not one experienced in corporate matters. In addition, Dunkin' Donuts cites portions of Mr. Gross's and Mr. Lima's depositions to support its claim that Mr. Gross read the Agreements. *See* Exs. 2-3 to Pls.' Mot. to Strike.[1] However, because it does not

[1] Mr. Lima objects to Dunkin' Donuts' use of his deposition transcript in support of its Motion. Mr. Lima contends that he informed the court reporter at his deposition that he was not waiving signature and that he wanted to read the transcript, and states now that he has been unable to do so because he has not yet been provided a copy of it. Def. Lima's Opp'n to Pls.' Mot. to Strike at 1-2 (citing Fed. R. Civ. P. 30(e)). At oral argument on

attach a complete portion of Mr. Gross's deposition transcript to its Motion, the Court is hesitant to rely on that to substantiate whether Mr. Gross actually read the Agreements. Mr. Lima's deposition transcript, though, does provide at least some evidence that Mr. Gross read the Agreements before signing them.

Dunkin' Donuts also asserts that Mr. Lima, though not represented by counsel when he entered into the Agreements, could have consulted with an attorney before signing them but declined to do so. Moreover, according to Dunkin' Donuts, Mr. Lima stated at his deposition that when he signed the Agreements he had no questions regarding his rights and obligations under them because he was an experienced Dunkin' Donuts franchisee and was familiar with their terms. Pls.' Mot. to Strike at 4. Again, while Dunkin' Donuts cites a portion of Mr. Lima's deposition to support these claims, it does not attach a complete portion of the deposition transcript to its Motion, and thus the Court is hesitant to rely on that deposition to substantiate whether Mr. Lima in fact had no questions about the Agreements. *See* Ex. 3 to Pls.' Mot. to Strike. However, Dunkin' Donuts' claims are bolstered by the fact that, in opposition to this Motion, Mr.

---

January 4, 2008, Dunkin' Donuts' counsel argued that the transcript had been made available but that Mr. Lima had chosen not to review it. Even assuming that Mr. Lima did not have the opportunity to review the entire transcript of his deposition, he does not challenge the accuracy of the portions of it that were attached to Dunkin' Donuts' Motion. The Court will therefore not reject the use of the transcript outright, but when weighing its veracity will take into consideration the fact that it has not been comprehensively reviewed by Mr. Lima.

Lima did not file an affidavit asserting that he had not read the documents or that he was unfamiliar with their terms.

In certain circumstances, courts have found that the failure of a party to be represented by counsel does not vitiate an otherwise valid jury waiver clause. *See, e.g.*, *PostNet Int'l Franchise Corp. v. Amercis Int'l, Inc.*, 2006 U.S. Dist. LEXIS 42794, at *7 (D. Col. June 26, 2006)(upholding a conspicuous jury wavier clause where a sophisticated franchisee did not consult with an attorney but had the opportunity to do so); *Bishop*, 2006 U.S. LEXIS 57947, at **4-5 (finding that where there was no gross disparity of bargaining power, a sophisticated franchisee, and a conspicuous waiver provision, the absence of an attorney during negotiations did not nullify the jury waiver clause); *Bonfield*, 717 F. Supp. at 596 (upholding a jury waiver clause where the franchisee chose not to have his counsel review the clause). As to Mr. Gross, the Court finds that there is sufficient evidence before it to conclude that Mr. Gross is an attorney and that he read the Agreements. As to Mr. Lima, the Court finds that there is sufficient evidence to conclude that Mr. Lima is an experienced franchisee and that he made a decision not to have his attorney review the Agreements before signing them. These facts, combined with the conspicuous nature of the waiver provisions, lead the Court to conclude that Defendants' waiver of their right to a jury trial was both knowing and voluntary.

Dunkin' Donuts also asserts that, by signing the Agreements, Defendants explicitly waived any claim for punitive damages. Courts have upheld waivers of claims for punitive damages where they are expressly stated in the franchise agreement. *See, e.g., Silver v. JTH Tax, Inc.*, 2005 WL 1668060, at *2 (E.D. Va. June 21, 2005)(concluding that under the law of either New York or Virginia the provision of the franchise agreement waiving any claim for punitive damages was enforceable); *Keating v. Baskin-Robbins USA Co.*, 2001 WL 407017, at *15 (E.D.N.C. Mar. 27, 2001)(finding that an explicit waiver of punitive damages in the franchise agreement rendered inappropriate an award of such damages).

In this case, Dunkin' Donuts points to two places in the parties' Agreements where a waiver of any claim for punitive damages appears. The first place is Section 11.7.2 of the General Terms and Conditions, where it states, partly in capital letters, that "[t]he parties hereto and each of them EXPRESSLY WAIVE(S) ANY CLAIM FOR PUNITIVE, MULTIPLE AND/OR EXEMPLARY DAMAGES . . . ." Ex. 1 to Pls.' Mot. to Strike; Ex. 2 to Def. Lima's Opp'n to Pls.' Mot. to Strike. The second place is the signature page, where it states, in bold and in capital letters:

> **FRANCHISEE ACKNOWLEDGES SECTION 11 OF THE GENERAL TERMS & CONDITIONS OF THIS CONTRACT, WHICH PROVIDES FOR FRANCHISEE'S EXPRESS WAIVER OF RIGHTS TO . . . OBTAIN PUNITIVE . . . DAMAGES . . . .**

*Id.* Much like the clause waiving the right to a jury trial, this waiver was listed in a conspicuous manner – in two places, both times in capital letters and once in bold font – which leads the Court to conclude that Defendants knowingly and voluntarily waived any claim for punitive damages.

Mr. Lima, however, argues that Section 11 of the General Terms and Conditions should be unenforceable or inapplicable on the grounds that: (1) Section 11 lacks mutuality because the franchisor is permitted to bring its claims in court without limitation, while the franchisee must waive its right to a jury trial and any claim for punitive damages in order to bring a counterclaim in court; (2) Section 11.6.1 states that the franchisor's remedy against the franchisee who brings counterclaims without waiving a jury trial or punitive damages is to seek arbitration, not to strike the franchisee's demands; and (3) clauses relating to the availability of a jury trial and punitive damages, such as Sections 11.7.3 and 11.7.4, suggest that absent a request for arbitration, Defendants may seek a jury trial and punitive damages. Def. Lima's Opp'n to Pls.' Mot. to Strike at 2-3. In addition, Mr. Lima argues for the first time at oral argument that enforcement of these waivers would be unconscionable because Dunkin' Donuts has itself violated the Agreements by bringing its claims in this Court rather than submitting them to arbitration.

Section 11 is an arbitration clause that delineates the manner in which all controversies, claims, or disputes between Dunkin' Donuts, the franchisor, and Defendants, the franchisee, will be dealt. Generally, any disputes must be submitted to arbitration, but in some situations the parties may bypass arbitration and litigate their claims in a court of competent jurisdiction. Section 11.5 allows the franchisor to bring a limited set of claims in court, and Section 11.6 allows a franchisee to bring any cause of action otherwise eligible for arbitration as long as the franchisee waives their right to a jury trial and any claims for punitive damages. Section 11.6.1 provides that, in the event that a franchisor brings any cause of action pursuant to Section 11.5, the franchisee may then bring any counterclaim, but only so long as they waive their right to a jury trial and any claims for punitive damages. If a franchisee fails to do so, they must submit that counterclaim to arbitration. *See* Ex. 2 to Def. Lima's Opp'n to Pls.' Mot. to Strike.

Addressing Mr. Lima's unbriefed claim first, the question of whether Dunkin' Donuts has violated the Agreements by filing a cause of action in this Court instead of submitting his claims to arbitration is a question for summary judgment that is not appropriately resolved in the context of this Motion. Even if it were appropriate for the Court to address this question at this juncture, Mr. Lima provides no case law, and the Court finds

none, to support his assertion that it would be unconscionable to enforce the Section 11 waivers against Defendants in the event that Dunkin' Donuts had improperly brought this lawsuit. The Court, then, rejects this argument to ignore the waiver provision.

In addition, while Mr. Lima claims that Section 11 creates a lack of mutuality between franchisor and franchisee, it only does so if Sections 11.7.1 and 11.7.2 are ignored. Those sections clearly require both franchisor and franchisee to waive their rights to a jury trial and any claims for punitive damages. The fact that Section 11.5 does not explicitly require the franchisor to waive these rights, while Sections 11.6 and 11.6.1 require the franchisee to do so, does not create any lack of mutuality between the parties. Rather, Sections 11.7.1 and 11.7.2 ensure that neither party may proceed with a jury trial or claim punitive damages.

As to Mr. Lima's claim that Section 11 is unenforceable or inapplicable because arbitration is Dunkin' Donuts' exclusive remedy for Defendants' failure to comply with Section 11.6.1, there is no language in the Agreements indicating that Dunkin' Donuts does not have the power to enforce Sections 11.7.1 and 11.7.2 by seeking the remedy asserted here. In addition, the Court finds Mr. Lima's argument that certain provisions in the Agreements permit Defendants to seek a jury trial and punitive damages absent a request for arbitration to be without merit.

Sections 11.7.3 and 11.7.4, which Mr. Lima cites in support of his contention, do not in any way vitiate the jury trial and punitive damage waivers. The Court therefore rejects these arguments to deny enforcement of the waivers.

Mr. Lima, however, goes on to contend that because Defendants' counterclaims seek relief for acts allegedly committed by Dunkin' Donuts outside of the contractual relationship between the parties, the Agreements – and thus the waivers within them – are inapplicable. These alleged acts include Dunkin' Donuts' failure to extend the franchise agreement for one of Defendants' shops and its failure to enter into a purchase option agreement with Defendants for the sale of all four of Defendants' shops. *See* Def. Lima's Opp'n to Pls.' Mot. to Strike at 3; Def. Lima's Answer at 7-11. In support of his argument, Mr. Lima cites *Barkan v. Dunkin' Donuts, Inc.*, 2007 U.S. Dist. LEXIS 80476 (D. R.I. Oct. 30, 2007), in which the U.S. District Court for Rhode Island held that a franchisor could not seek the enforcement of a jury waiver clause in their contract with a franchisee because the franchisee's lawsuit arose out of a dispute relating to a wholly separate settlement agreement. *Id.* at *22.

This case differs from *Barkan* in two ways. First, the language of Section 11 is broad enough to encompass all disputes between the parties, including those not arising out of their contractual relationship. Section 11.0 states that all claims

between the franchisee and franchisor "of whatever kind or nature, whether arising out of or relating to the negotiation, performance or breach of this *or any other agreement or otherwise*," must be submitted to arbitration. Ex. 2 to Def. Lima's Opp'n to Pls.' Mot. to Strike (emphasis added). Section 11.6 allows the franchisee to litigate any cause of action otherwise eligible for arbitration, which, when read in conjunction with Section 11.0, means *any* dispute between the franchisor and franchisee. *Id.* If these clauses apply to disputes beyond the scope of these particular Agreements, the Court sees no reason why the waivers of Sections 11.7.1 and 11.7.2 would not have a similarly broad application.

More importantly, though, Defendants' counterclaims are, at bottom, allegations that Dunkin' Donuts acted in bad faith in terminating the Agreements. *See* Def. Lima's Answer at 13-14 ("Dunkin' Donuts acted in bad faith to terminate the franchise agreements . . . ."). As a result, while the counterclaims are pled as tort claims, they are more accurately described as breach of contract claims transformed into tort claims. The Fourth Circuit has rejected attempts to shoehorn a breach of contract action into a tort framework, finding it "unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." *Strum v.*

*Exxon Co.*, 15 F.3d 327, 333 (4th Cir. 1994); *see also Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998)(holding that if a franchisor failed to fulfill its contractual obligations, the remedy was contract damages, not damages in tort). Because these counterclaims involve questions of whether Dunkin' Donuts fulfilled its contractual obligations under the Agreements, their terms – including the waiver provisions – necessarily apply. Thus, the Court rejects Mr. Lima's argument that the counterclaims do not arise out of the contractual relationship between the parties, and will enforce the waivers.

## III. Conclusion

For these reasons, the Court will grant Dunkin' Donuts' Motion to Strike Defendants' Jury Demand and Any Claim for Punitive Damages.

An appropriate Order will issue.

January 8, 2008
Alexandria, Virginia

______________/s/_________________
James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE